IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TRUDY HEMINGWAY, *et al.*, <br><br> Plaintiffs, <br> v. <br><br> E. ROBERT RUSSO, *et al.*, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER DENYING AND DEFERRING UNTIL TRIAL DEFENDANTS' MOTIONS IN LIMINE** <br><br> Case No. 2:16-cv-00313 <br><br> District Judge Jill N. Parrish |

Before the court are four motions in limine, (ECF Nos. 87, 88, 89, and 90), filed by defendants Christopher McHugh and Daniel Bartlett on November 8, 2018. Plaintiffs responded to three of those motions on November 15, 2018. (ECF Nos. 101, 102, and 104). The court heard oral argument on the motions at the final pretrial conference on November 30, 2018.

## I. ANALYSIS

The purpose of a motion in limine is to resolve disputes about the admissibility of evidence before trial. But this purpose cannot be fulfilled when a motion in limine is insufficient to frame the specific evidence that its movant seeks to exclude. Abstract discussions regarding evidentiary principles, without any apparent connection to potential evidence in the case, are singularly unhelpful. Additionally, a motion in limine is not a procedure by which parties can secure judicial reinforcement of the ever-applicable Federal Rules of Evidence. It is also not an opportunity for counsel to conceive of every possible evidentiary contingency at trial—no matter how outlandish—and obtain prophylactic rulings to prevent them.

To avoid motions in limine that display these problems, the court's trial order requires that, "[b]efore filing . . . any motion in limine, the parties must meet and confer to attempt to resolve the dispute." (ECF No. 75). The defendants' motions in limine each represent that defendants "met and conferred regarding this *Motion* with Plaintiffs' counsel via email[,]" but, as discussed below, these motions contain defects that seem to indicate that there was no real attempt to resolve these evidentiary disputes before submitting them for judicial resolution.

### 1. DEFENDANTS' MOTION TO EXCLUDE THE COURT'S MEMORANDUM DECISIONS AND ORDERS

The court is simply mystified about why this particular issue requires judicial intervention. At the very broadest level, it is baffling that either party might consider the court's resolution of the parties' dispositive motions in this case to amount to evidence. If so, how do they expect that it might be introduced? Can the court anticipate appearing on the parties' witness list for the purpose of establishing a foundation for its rulings? Or did the parties expect that they might simply reproduce excerpts from those orders in their opening statements, hoping to sway the jury with a judicial imprimatur on their version of events?

There would appear to be two possible scenarios that led to this highly unnecessary motion: (1) concerned with unfavorable language resulting from the procedural posture of their motion for summary judgment, the defendants concluded that it would be wise to obtain a prophylactic ruling that the order is inadmissible; (2) the plaintiffs gave some indication that they did, in fact, intend to use this court's summary judgment decision as evidence, and the defendants' motion merely responds. The former, as explained above, would represent an improper use of the motion in limine procedure. If it were the latter, the defendants' motion utterly fails to explain why they have reason to believe that the plaintiffs intend to use the court's prior orders as evidence.

As a result, the court has no concrete dispute to resolve. And in any event, plaintiffs did not respond to this motion in limine, whether because they had no intent to use the court's orders as evidence in the first instance, or because they have since wisely abandoned that effort. The court declines to issue a ruling on a question of law with an answer that seems so obvious as to preclude its necessity. Defendants' first motion in limine is therefore denied.

## 2. DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF DANIEL MCGUIRE'S MEDICAL RECORDS

Defendants' next motion in limine seeks the exclusion of plaintiffs' exhibit 21, which consists of pictures of two documents given to Daniel McGuire when he sought medical treatment for hearing loss the same day of the search.[1] Mr. McGuire alleges that the SWAT team's use of an explosive charge to breach the basement resulted in hearing loss.

---

[1] While the motion does not formally request that the court do anything other than exclude plaintiffs' exhibit 21, it also suggests that, without an expert witness, Mr. McGuire himself cannot "testify about any damage allegedly caused to his hearing by the UPD." Had defendants sought such a ruling, that request would be denied. One of the cases cited by defendants demonstrates the wrongness of their position. In *Felkins v. City of Lakewood*, 774 F.3d 647, 652 (10th Cir. 2014), the Tenth Circuit exposited a useful discussion of the character of injury testimony that is appropriately offered by a lay witness, and that for which an expert is required. To illustrate the distinction, the court summarized a case in which "a car-accident victim was held competent to testify about such matters as her difficulties focusing her left eye, her now-irregular menstrual cycle, and her children's postaccident nervousness, but not competent to testify that her son had suffered a punctured lung and two broken ribs or that her eye condition had been caused by the accident." *Id.* Mr. McGuire may therefore testify about the symptoms he experienced or continues to experience so long as he does not transgress into expert territory by, for example, discussing his diagnosis. The record indicates that those officers tasked with setting and detonating the explosive charge were required to wear ear protection. That requirement amply demonstrates the "generally understood causal connection between physical phenomena—in this case, very loud sounds, which we refer to colloquially as 'deafening'—and [hearing loss] that 'would be obvious to laymen.'" *Tufariello v. Long Island R. Co.*, 458 F.3d 80. Given this relationship, a jury, upon crediting Mr. McGuire's testimony regarding his hearing loss, may permissibly infer that it was caused by the explosive charge.

Defendants' seek the exclusion of "[a]ny reference to, testimony on, or argument about Plaintiffs' Proposed Trial Exhibit 21 . . . because Plaintiffs have not designated an expert witness to interpret these medical records."[2]

Under Rule 701, a lay witness may not offer opinion testimony "based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. Plaintiffs appear to concede that an expert would be required to discuss the contents of the medical records, but represent that they intend to use exhibit 21 only to prove that Mr. McGuire sought medical treatment for hearing loss the day of the search.

The court finds that this is a permissible purpose. Mr. McGuire may introduce exhibit 21 for the limited purpose of proving that he sought medical treatment for hearing loss immediately after the search. Defendants may request a limiting instruction to this effect. Mr. McGuire may not, however, testify as to his diagnosis (if any) or attempt to explain the highly complex data reproduced in those documents. Additionally, as discussed at the final pretrial conference, plaintiffs' exhibit 21 must be redacted so as to display only that information that establishes that Mr. McGuire sought treatment for perceived hearing issues the day of the search.

Defendants' second motion in limine is therefore denied.

3. **DEFENDANTS' MOTION TO EXCLUDE NOTICE OF EVICTION AND NOTE FROM MISTY ITALASANO**

Next, defendants seek to exclude plaintiffs' exhibits 18 and 19, arguing principally that they are irrelevant. Plaintiffs' exhibit 18 is an eviction notice executed by Ms. Hemingway and allegedly delivered to her tenant, Misty Italasano, the day after the warrant was executed. Plaintiffs' exhibit 19 is purportedly a handwritten note from Ms. Italasano, informing Ms.

---

[2] Defendants' motion also contests the authenticity of this exhibit. This concern will be addressed as part of defendants' separate motion raising authenticity objections. (ECF No. 100).

Hemingway that she would be vacating the apartment, offering an exculpatory explanation for the no-knock warrant, and apologizing for the search of Ms. Hemingway's home. As explained below, whether or not these exhibits are relevant is inextricably intertwined with the fluid presentation of evidence at trial. That is, because there are plausible scenarios under which these exhibits would become relevant, their admissibility is not amenable to pretrial resolution.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

The Cottonwood Heights Defendants argue that indicia of a separate basement apartment is relevant only if it could have informed their awareness of the separate units (1) before applying for the warrant, and (2) while executing the warrant. Because this document concerns events *subsequent* to the search of plaintiffs' home, defendants argue it is irrelevant.

Plaintiffs respond that the defendants have themselves made the actual, rather than perceived, existence of separate units relevant by their suggested inclusion of an element in the final jury instructions. As part of the failure to retreat claims brought against both defendants, defendants submit that the jury must find that "Misty Italasano lived in a separate dwelling unit within the home[.]" (ECF No. 99 at 32, 35).

If the defendants are successful in securing the inclusion of this jury instruction, plaintiffs' exhibits 18 and 19 will be relevant to that element. And even if this element is ultimately omitted from the final jury instructions, there are other possible evidentiary developments at trial that would make these exhibits relevant. Indeed, defendants represented

during oral argument that they intend to dispute the actual existence of separate units at trial. For these reasons, defendants' motion to exclude plaintiffs' exhibits 18 and 19[3] is deferred until trial.

### 4. DEFENDANTS' MOTION TO EXCLUDE COTTONWOOD HEIGHTS POLICE DEPARTMENT POLICY MANUAL

Finally, defendants seek the exclusion, on relevance grounds, of "any reference to, testimony on, evidence of, or argument about Plaintiffs' Proposed Trial Exhibit 12, Cottonwood Heights Police Department Policy Manual." This policy manual states, among other things, that a warrant application should include "[f]ull disclosure of known or suspected residents at the target location and any indication of separate living spaces at the target location. For example, it should be disclosed that several people may be renting bedrooms at a single location, even if the exact location of the rooms is not known." (ECF No. 88-1 at 12–13).

Defendants argue that their failure to comply with the policy manual is not relevant to whether they violated the plaintiffs' constitutional rights. In support, they cite *Jensen v. Garden*, a case that illustrates the uncontroversial proposition that "a failure to adhere to a policy or regulation (*without more*) does not equate to a constitutional violation." No. 18-4048, 2018 WL 5099601, at *5 (10th Cir. Oct. 19, 2018) (emphasis added). In *Jensen*, a § 1983 plaintiff unsuccessfully urged that a jail's violation of its policy manual regarding medical care was sufficient to establish an Eighth Amendment violation. *See id.* But plaintiffs do not seek to transform noncompliance with the policy into a constitutional violation. Rather, they contend

---

[3] Defendants also oppose the admission of plaintiffs' exhibit 19 on hearsay grounds. In response, plaintiffs contend that the note would be introduced not for the truth of its contents, but rather as evidence of the landlord-tenant relationship between Ms. Italasano and Ms. Hemingway, as well as the existence of separate living units. These purposes are sufficient to remove plaintiffs' exhibit 19 from the definition of hearsay under Rule 801 of the Federal Rules of Evidence.

that the policy restates the relevant constitutional standard, and that Mr. McHugh's professed awareness[4] of the policy therefore evidences his awareness of the constitutional standard.[5]

To recover under their first claim, the plaintiffs will need to prove that (1) Mr. McHugh knowingly or recklessly made false statements or omissions in his warrant affidavit; and (2) the misstatements or omissions were material, such that a remedied affidavit would have vitiated probable cause as to the search of plaintiffs' home. Plaintiffs contend, and the court agrees, that Mr. McHugh's awareness of the departmental policy is relevant in that it makes it more likely that his misstatements or omissions were made knowingly.

Additionally, plaintiffs assert that the manual is relevant to their request for punitive damages, which are available in a § 1983 case "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *See Smith v. Wade*, 461 U.S. 30, 56 (1983). This standard, "at a minimum, require[s] recklessness in its subjective form." *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 536 (1999). That is, to award punitive damages, a § 1983 plaintiff must show that the defendant disregarded a risk of harm of which he was aware. *See id.* The court agrees that the policy, in combination with Mr. McHugh's knowledge thereof, is relevant to establishing his awareness of the risk of an overbroad warrant, the conscious disregard of which, if found by the jury, may appropriately subject him to punitive damages liability.

---

[4] Mr. McHugh testified in his deposition that he was familiar with this specific policy statement when he wrote the warrant application.

[5] In support, plaintiffs cite a district court opinion holding that a § 1983 defendant's actual knowledge—which he obtained from a departmental policy handbook—that his conduct violated the plaintiff's constitutional rights was sufficient to strip him of qualified immunity notwithstanding that the right at issue was not clearly established at the time of infringement. That use of departmental policy is markedly different from the purpose for which plaintiffs seek to introduce this policy manual here.

While the court will allow the admission of the departmental policies, it acknowledges that their introduction is not without risks. The jury may be tempted to infer too much from the policy manual, concluding that its command to include "any indication of separate living spaces at the target location" must mean that if Mr. McHugh had done so, it would have vitiated probable cause. But these risks can be adequately mitigated by a limiting instruction.[6] Thus, when the manual is offered at trial, the court will read a limiting instruction[7] to the jury that will clearly distinguish between noncompliance with a policy and a constitutional violation. That instruction will also be included in the final substantive jury instructions.

## II.     ORDER

For the reasons articulated, defendants' motions in limine are **DENIED.** Specifically:

1. Defendants' Motion in Limine Re: Court's Memorandum Decisions and Orders (ECF No. 87) is **DENIED.**

2. Defendants' Motion in Limine Re: Plaintiffs' Proposed Trial Exhibit 21 (ECF No. 90) is **DENIED.** That exhibit, however, must be redacted to comply with the court's ruling.

3. Defendants' Motion in Limine Re: Plaintiffs' Proposed Trial Exhibits 18 and 19 (ECF No. 89) is **DEFERRED UNTIL TRIAL.**

---

[6] The potentially hazardous relationship between a collateral law or policy and a constitutional violation in the § 1983 context is apparently so prevalent that the Seventh Circuit's pattern civil jury instructions include a model limiting instruction to address these concerns. It reads: "You have heard evidence about whether Defendant's conduct [complied with/violated] [a state statute/administrative rule/locally imposed procedure or regulation]. You may consider this evidence in your deliberations as to [identify claim]. But remember that the issue is whether Defendant [describe constitutional violation claimed, e.g., 'falsely arrested Plaintiff,' 'used excessive force on Plaintiff'], not whether a [statute/rule/procedure/regulation] might have been [complied with/violated]." The court will employ a substantially similar instruction in this case.

[7] Counsel may each file a proposed limiting instruction, using the framework of the Seventh Circuit's pattern instruction reproduced in footnote 6, by December 5, 2018 at 5:00pm.

4. Defendants' Motion in Limine Re: Plaintiffs' Proposed Trial Exhibit 12 (ECF No. 88) is **DENIED.** The court will, however, include a limiting jury instruction regarding the appropriate use of the department policy manual.

Signed December 4, 2018

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge